# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Vernette E. Stewart,           :
                                      :

                **Plaintiff,**       :

         v.                   :           **Civil Action No. 13-1125 (CKK)**

                                        :

Mary Jo White,               :

                                        :

             **Defendant.**     :

## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, sues her former employer, the Securities and Exchange Commission ("SEC"), for alleged violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*.. In addition, plaintiff accuses the defendant of (1) "negligen[ce] in the loss of [her] job" and benefits, (2) having "caused a hostile work environment[,]" and (3) retaliation. Civil Rights Complaint ("Compl.") [Dkt. # 1] at 1-2.

Defendant has moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) for want of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim or for summary judgment under Rule 56.[1] *See* Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. [Dkt. # 9]. Plaintiff has filed an opposition, *see* Pl.'s Resp. to Def.'s Dispositive Mot. to Dismiss or in the Alternative, for Summ. J.; and Response to Incorrect Statements [Dkt. # 12] ("Pl.'s Opp'n"), and defendant has replied [Dkt. # 13]. Upon consideration of the parties'

---

[1]   Defendant's motion to dismiss for want of subject matter jurisdiction is based on plaintiff's mere mention of the words defamation of character and slander in one of the more than 100 pages attached to the complaint. *See* Def.'s Mem. of P. & A. at 42-45 (citing Compl. Attachs. at ECF p. 14). The Court finds no claim of defamation set forth in the complaint, and there is no question that the federal statutes confer subject matter jurisdiction. Hence, defendant's motion to dismiss under Rule 12(b)(1) is denied as moot.

submissions and the entire record, the Court will grant defendants' motion in part and deny it in part.

# I. BACKGROUND

Plaintiff worked as a secretary at the SEC for a little over 10 years in the Office of Compliance Inspection and Examination. Pl.'s Opp'n at 4; Def.'s Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Facts") ¶ 1. Deputy Director Andrew Bowden was plaintiff's supervisor at the relevant time period, from November 1, 2011 to June 1, 2012, when plaintiff resigned amid disputes about her absences from work and her job performance. *See* Def.'s Facts ¶¶ 4, 27, 31-39.

### 1. Plaintiff's Work Environment

Plaintiff's "main duties were[:] travel and meeting coordinator, timekeeper, maintain[ing] supervisor's calendar, track[ing] incoming correspondences, answer[ing] phone calls, sort[ing]/distribut[ing] daily mail, log[ging] and greet[ing] visitors to meetings, maintain[ing] filing systems[,] and [acting as] a liaison to a staff of 30 or more to resolve administrative issues and fulfill many other administrative requests." Pl.'s Opp'n at 4 ("Statement of Material Facts of a Genuine Dispute to Proceed with Civil Complaint Without Dismiss").

According to plaintiff's version of events, she and Bowden initially had a "positive" working relationship, which appears to have lasted just a few months. *Id.* Plaintiff's requests for an accommodation for an upper respiratory condition had been approved in September 2011, which enabled her to take unscheduled leave either in the form of accrued leave or leave without pay ("LWOP"). Def.'s Facts ¶ 25; *see* Pl.'s Opp'n at 5 ("Andrew Bowden had kept his word throughout the process of reapplying for Reasonable Accommodations to include FMLA.") In 2012, plaintiff's "medical condition [] bec[a]me severe" and she "started to have more flare ups

than usual [and] needed more days off" to recuperate since she "would get ill or severely congested . . . daily" when she arrived at work.  Pl.'s Opp'n at 5.  Plaintiff's "medical certification had been updated for flare-ups, from an estimate 3-4 times per 6 months, to an estimate 6-8 times per 6 months."  *Id.* (citing Ex. 1C).  Plaintiff asked Bowden "for assistance in moving [her] from the . . . assigned [] area [where she had worked for six years], as part of the reasonable accommodations," which he denied.  In addition, Bowden allegedly told plaintiff that he would not "approve any advanced leave requests."[2]  *Id.*

In a FMLA form dated March 15, 2012, plaintiff's health care provider described her condition as "seasonal Allergies Rhinitis Mild intermed [sic] Asthma & [intelligible] sinus, hypertension," and stated that those conditions "will limit working environment for patient[;] she should work in a well ventelated [sic] working environment with the use of HEAP filter purifier. Will need to use leave for episodic flare ups during the course of a year."  Compl. Attach 3 (Certification of Heath Care Provider for Employees Serious Health Condition, ECF pp. 47-50 ("FMLA Form"); Def.'s Ex. S.  The health care provider checked the "yes" box following a boilerplate question of whether "the employee [would] be incapacitated for a single continuous period of time due to . . . her medical condition, including any time for treatment and recovery," and estimated the period of incapacity to be "6-8 times per 6 months," and the treatment schedule to be "2-3 times per year."  FMLA Form at 3.  The "[p]robable duration of [plaintiff's] condition" was diagnosed as "Lifetime," *id.* at 2, and the provider wrote that plaintiff should be absent from the work environment during flare ups "but still may perform [her] job . . . thru telecommute."  *Id.* at 3.

---

[2]     During her tenure, plaintiff was a member of the National Treasury Employees Union. Def.'s Facts ¶ 2.  Under the Collective Bargaining Agreement, an employer had the discretion to approve advanced sick leave upon written request of an employee whose leave balance was exhausted.  *Id.* ¶ 18.

By letter dated April 9, 2012, defendant's Disability Program Officer informed plaintiff that her request to extend and modify the September 2011 accommodations was denied for several reasons. The FMLA documentation was "deemed insufficient for amongst other things, failure to indicate a prognosis and failure to address how [plaintiff was] impaired when [she] experience[d] a flare-up of [her] episodic condition." Def.'s Ex. Q. In addition, defendant noted that it appeared that plaintiff had signed on the line for the health care provider's signature and, thus, it was "unclear whether the information was verified by [plaintiff's] physician." *Id*. at 2. Plaintiff's appeal of that decision was denied because she had not provided "any additional medical documentation" as of April 10, 2012, when the appeal was received. Def.'s Ex. U.

Plaintiff resubmitted the FMLA form with a revised date of May 10, 2012. Compl. Attach, ECF pp. 73-76 ("Am. FMLA Form"); Def.'s Ex. W. In addition, plaintiff submitted a note from her health care provider requesting that "all paperwork as given" be accepted and confirming that "the signatures on these documents are authentic." *Id*., ECF p. 77. In the amended FMLA form, the doctor struck "Lifetime" as the probable duration of plaintiff's condition and wrote: "The current condition will affect the patients [sic] ability to perform daily functions and can require leave be taken as needed. Her condition is being monitored continuously." The doctor also added the following line to the description of plaintiff's condition (question 4): "(Flare up – a sudden appearance of worsening of symptoms of a disease or condition)" (parenthesis in original). Am. FMLA Form at 2. In all other respects, the amended form contained the same information and written comments as the original form.

Defendant's Employee & Labor Relations Specialist Maxine Woodland informed plaintiff by an e-mail dated May 23, 2012, that the additional documentation met "the requirements for days off," but she reversed her position six days later and informed plaintiff that

"[o]n closer inspection, I cannot advise that this documentation is administratively acceptable." Def.'s Ex. V. Through a chain of e-mails, plaintiff was informed by Assistant Director of Employee Relations Rebecca Pikofsky that Woodland "did not have the authority to approve your FMLA. That authority belongs to your supervisor. Your FMLA documentation is not administratively acceptable as Mr. Bowden informed you." Def.'s Ex. X.

According to defendant's documentation, at the time plaintiff requested advanced sick leave in April 2012, "she had a negative sick leave balance of approximately 70 hours." Def.'s Facts ¶ 18. Her request was denied and plaintiff took "unapproved leave" on April 30, May 1, 2, 4, and 21 of 2012. *Id*. ¶ 21. In a letter dated May 17, 2012, Bowden issued plaintiff a "Letter of Reprimand" with regard to her "frequent use of unscheduled sick leave" and consequent failure to perform work assignments, which Bowden deemed "unacceptable." Def.'s Ex. K ("Reprimand Letter"). Bowden also reminded plaintiff that she might be eligible for leave under FMLA and informed her about the process for seeking such leave. *Id*. The letter further stated that "[i]f you fail to invoke your rights under FMLA and continue to take sick leave with a depleted sick leave balance, you will continue to be placed on AWOL [absent without leave] status which may subject you to disciplinary action up to and including removal from Federal Service." *Id*. Plaintiff was told to provide "a doctor's note for any future unscheduled leave, including your recent unscheduled leave on May 15 and 16" of 2012. *Id*. The letter concluded with advisements about plaintiff's right to (1) file a grievance in accordance with the CBA within 21 days of her receipt of the letter, (2) contact an Equal Employment Opportunity ("EEO") counselor and file a discrimination charge with the agency within 45 days, and (3) seek confidential counseling through the agency's Employee Assistance Program and to have Bowden consider "any health or personal problems that [might] affect your employment." *Id*. at 5.

Plaintiff eventually provided medical documentation for certain absences and, at Bowden's request, her time records for April 30, May 1, 2, and 4 of 2012 were changed from AWOL to LWOP. Def.'s Ex. M.

Plaintiff submitted her resignation by letter dated May 17, 2012, which reads:

> To All That is Concern: I, Vernette E Stewart, will resign from the U.S. Securities and Exchange Commission (SEC) at the end of pay period 2012-12. Due to various circumstances that couldn't be worked out, my last day of duty will be June 1, 2012. Consider this my resignation as I embark on new endeavors. Thank you[.]

Def.'s Ex. FF. Plaintiff's resignation was effective June 1, 2012. Def.'s Facts ¶ 39.

## 2. Plaintiff's EEO Activity

On July 26, 2012, plaintiff submitted a form captioned "Formal EEO Complaint," in which she checked age, color, disability, religion, retaliation, gender and race as the bases of discrimination. Def.'s Ex. A. In addition, plaintiff checked time and attendance, reasonable accommodations, reprimand, harassment (non-sexual), and defamation as the issues giving rise to the grievance. *Id.*

In a letter to plaintiff dated September 6, 2012, captioned "Partial Dismissal and Partial Acceptance of Complaint No. 00030-2012," the agency's EEO office informed plaintiff that it was dismissing her claim of retaliation arising from an individual's "oversight and involvement in [plaintiff's] time and attendance records" because the claim failed to raise "any EEO-related concerns" and because "there [was] no indication that [plaintiff had] previously participated in the EEO process." Def.'s Ex. B at 2. In addition, the agency informed plaintiff that it was dismissing as untimely her discrimination claim arising from AWOL charges in August 2011 and failure to receive donated leave from the leave share program in 2011 because she had failed to contact an EEO Counselor within 45 days of the alleged discriminatory actions. *Id.* Plaintiff

was advised "that a partial dismissal is reviewable by an [EEOC] Administrative Judge if a hearing is requested on the remainder of the complaint, but is not appealable until final action is taken on the remainder of the complaint." *Id.* (citing 29 C.F.R. § 1614.107(b)). The letter listed the claims that were accepted for investigation and stated:

> If you believe that the accepted claims in this complaint have not been correctly identified, please provide [] written notification within five [] calendar days after receipt of this letter, specifying why you believe that the claims have not been correctly identified. The claims must be limited to those [] discussed with the EEO Counselor and raised in the formal complaint.

*Id.* at 3. The letter further informed plaintiff that her failure to respond would be taken as her agreement "with the [defined] claims." *Id.* Plaintiff does not dispute that she "did not indicate that the claims were incorrectly identified," Def.'s Fact ¶ 15, but rather states that she has "no recollection of having received the September 6, 2012 [] correspondence . . . ." Pl.'s Opp'n at 2.

The agency investigated whether plaintiff "was subjected to discrimination based on age, color, disability (physical), religion, gender, and race (Black or African American) when" she was:

(1)     denied advanced sick leave on April 27, 2012;

(2)     charged as AWOL on April 30, May 2, May 4, and May 21, 2012;

(3)     denied on May 3, 2012, an extension and modification of the reasonable accommodation provided for her disability in September 2011;

(4)     denied religious compensation time between May 16, 2012 and May 25, 2012;

(5)     issued the Letter of Reprimand on May 17, 2012;

(6)     denied FMLA leave on May 29, 2012;

(7)     forced to resign effective June 1, 2012.

Def.'s Ex. B. (Sept. 6, 2012 Letter at 3).

The agency rendered its final agency decision ("FAD") against plaintiff on June 10, 2013. Def.'s Ex. C. Plaintiff received the decision on June 13, 2013, Ex. D, and initiated this civil action by lodging the complaint and an application to proceeding *in forma pauperis* with the Clerk of Court on July 12, 2013. *See* Dkt. ## 1, 2 ("RECEIVED" date stamp).

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that she] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id*. Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id*.

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record -- including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence -- in support of her position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants–CWA, AFL–CIO v. U.S. Dep't of Transp*., 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact," the district court may, *inter alia*, "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Anderson*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing *Kuo–Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Importantly, "[w]hile summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [the] obligation to support [her] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortgage Corp*., 172 F. Supp. 2d 98, 104 (D.D.C. 2001), *aff'd*, 328 F.3d 647 (D.C. Cir. 2003); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases).

## III. DISCUSSION

### A. The Timeliness of the Complaint

Defendant argues first that plaintiff's complaint is untimely filed because, according to defendant, the complaint was filed on July 24, 2013, when it should have been filed by July 13, 2013. Def.'s Mem. of P. & A. at 4-6. This argument overlooks the crucial fact of plaintiff's *in forma pauperis* ("IFP") status. Litigants, such as plaintiff, who submit their complaints with a motion to proceed IFP are "not responsible for the administrative delay associated" with the court's ruling on the IFP motion. Indeed, "the presentation of a complaint [and] a petition to proceed *in forma pauperis* tolls the . . . period of limitations . . . ." *Guillen v. National Grange*, 955 F. Supp. 144, 145 (D.D.C. 1997) (citations omitted); *see accord Nkengfack v. American Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 182 (D.D.C. 2011) ("It is well settled . . . that the statutory filing period is tolled while such an application to proceed IFP is pending before the Court."); *Washington v. White*, 231 F. Supp.2d 71, 75-76 (D.D.C. 2002) (citing cases).

Since defendant acknowledges that plaintiff had until July 13, 2013, to file this action, the Clerk's receipt of the complaint and IFP application on July 12, 2013, as evidenced by the stamp on the face of those documents, constitutes a timely filing. Hence, defendant's motion to dismiss the complaint as time-barred is denied.

### B. The Exhaustion of Administrative Remedies

Defendant argues next that plaintiff's claims of retaliation and hostile work environment are subject to dismissal because she failed to exhaust those claims at the administrative level. Def.'s Mem. at 8-10. Under the broad authority conferred upon it by Congress, the EEOC "has established detailed procedures for the administrative resolution of discrimination complaints" raised by federal employees. *Bowden v. U.S.*, 106 F.3d 433, 437 (D.C. Cir. 1997). Specifically,

if an individual believes that she has been unlawfully discriminated against, she must consult an

EEOC counselor within forty-five days of the alleged discriminatory action to attempt an

informal resolution of the matter. 29 C.F.R. § 1614.105(a)(1). The limitations period begins to

run when the employee "knew, or should have known, about the alleged discriminatory action."

*Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003); *see also Johnson v. Gonzales*, 479 F.

Supp. 2d 55, 59 (D.D.C. 2007) (stating that the forty-five day period is triggered when the

plaintiff has a "reasonable suspicion" that she has been the victim of discrimination). If the

matter is not resolved informally after the counseling period, the employee must file with the

EEOC a formal written administrative complaint against the agency. 29 C.F.R. § 1614.106. The

agency is then obligated to conduct "an impartial and appropriate investigation of the complaint

within 180 days of the filing of the complaint unless the parties agree in writing to extend the

time period." *Id*. § 1614.106(e)(2). After filing a formal written complaint, the employee may

file a civil action once the agency issues an adverse final decision or if 180 days has elapsed

without a decision. *Id*. § 1614.407(b).

Importantly, "[a] vague or circumscribed EEOC charge will not satisfy the exhaustion

requirement for claims it does not fairly embrace" because "[a]llowing a complaint to encompass

allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's

investigatory and conciliatory role, as well as deprive the charged party of notice of the charge."

*Marshall v. Fed. Express Corp*., 130 F.3d 1095, 1098 (D.C. Cir. 1997) (citation omitted). While

the administrative charge requirement "should not be construed to place a heavy technical

burden" on the plaintiff, it is "not a mere technicality" and the district court "cannot allow liberal

interpretation of an administrative charge to permit a litigant to bypass the . . . administrative

process." *Park v. Howard Univ*., 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks

and citations omitted). If the employee later brings suit in federal court, she will be limited to pursuing those "claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* In other words, while every detail of the eventual complaint need not be presaged in the EEOC filing, the substance of the claims must fall within the scope of "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.*

The purpose of a charge to the EEOC is to "give [the] agency a chance to act on it." *See Marshall*, 130 F.3d at 1098; *see also Park*, 71 F.3d at 907 (noting that the exhaustion rule "serves the important purpose of giving the charged party notice of the claim") (internal marks omitted). "[T]he law does not hold an employee to the use of magic words to make out a proper discrimination charge. Instead, a plaintiff must only alert the EEOC and the charged employer with the nature of the alleged wrongdoing." *Johnson–Parks v. D.C. Chartered Health Plan*, 806 F. Supp. 2d 267, 270 (D.D.C. 2011) (internal citation and quotations omitted). To determine whether the EEOC and the charged employer have been adequately notified, "the Court considers, *inter alia*, whether the claim is like or reasonably related to the allegations of the charge and growing out of such allegations and arises from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* (internal citations and quotations omitted).

Here, the EEOC's investigation covered the following seven discrete actions (or category of actions) of alleged discrimination: (1) the denial of advanced sick leave on April 27, 2012; (2) the AWOL charges on April 30, May 2, May 4, and May 21, 2012; (3) the refusal on May 3, 2012, to extend and modify the reasonable accommodation provided plaintiff in September 2011; (4) the denial of religious compensation time between May 16, 2012 and May 25, 2012;

(5) the issuance of a Letter of Reprimand on May 17, 2012; (6) the denial of FMLA leave on May 29, 2012; and (7) plaintiff's forced resignation effective June 1, 2012. Def.'s Ex. B. Plaintiff has not produced any evidence to show that she exhausted either the retaliation or the hostile work environment claim. She attempts to rectify the problem with regard to retaliation by claiming in this litigation that she received the Reprimand Letter "one day after" she either inquired about filing an EEO complaint, Pl.'s Opp'n at 3, or submitted her EEO complaint. *Id.* at 19. Plaintiff does not point to anything in the record to corroborate these statements, and the latter possibility is belied by the fact that the EEO complaint in the record is dated July 26, 2012, which is approximately *two months* after the May 17 reprimand letter. Plaintiff also states that she does not recall receiving the agency's letter setting forth the accepted claims. She then surmises that had she received the letter, she "would've submitted the request in 5 days" but does not identify what other or different claims she would have presented. Pl.'s Opp'n at 2. In addition, plaintiff has not indicated that she attempted to clarify her claims at any point during the agency's investigation.

In the end, plaintiff simply cannot survive summary judgment on such speculative, conclusory, and self-serving statements. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."). Hence, the Court, finding no genuine factual dispute on the exhaustion question, will grant summary judgment to defendant on the unexhausted retaliation and hostile work environment claims. *See McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) ("[C]ourts have generally held that 'failure to

respond to the framing of the issue supports a finding that' plaintiff has failed to exhaust h[er] administrative remedies with respect to those claims not approved by the EEO.").

## C. The Discrimination Claims

In ADEA and Title VII cases lacking direct evidence of discrimination, courts traditionally follow the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *Evans v. Sebelius*, 716 F.3d 617, 620 (D.C. Cir. 2013); *Barnett v. PA Consulting Grp., Inc*., 715 F.3d 354, 358 (D.C. Cir. 2013) ("We consider [plaintiff's] age . . . discrimination claim[] in the same way we analyze Title VII claims."). Where, as here, the defendant has proffered a legitimate, non-discriminatory explanation for the challenged adverse decision, "the *McDonnell Douglas* inquiry distills to one question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [age] . . . ?" *Evans*, 716 F.3d at 620. As part of this inquiry, the Court examines whether "there is evidence from which a reasonable jury could find that the employer's stated reason for the [decision] is pretext and any other evidence that unlawful discrimination was at work." *Barnett*, 715 F.3d at 358. However, the Court is only concerned with whether the action was discriminatory and it cannot "act as a super-personnel department that reexamines an entity's business decisions" absent discriminatory motive. *Id.* at 359 (citation omitted).

### 1. The Denial of Advanced Sick Leave and AWOL Charges

These alleged adverse decisions arose from defendant's denial of plaintiff's requests for advanced sick leave on April 27, 2012, and the subsequent unscheduled leave plaintiff took on April 30, May 2, May 4, and May 21, 2012. Plaintiff does not dispute that she had a negative sick leave balance and that her supervisor, Bowden, had the discretion to grant or deny advanced

sick leave.  In the May 17, 2012 reprimand letter, Bowden refers to a previous discussion he had

with plaintiff "regarding [her] frequent use of unscheduled sick leave which ha[d] materially and

adversely affected [Bowden's] ability to assign [plaintiff] regular work, to rely on [her] work

performance, and to lead the [office's] national examination program."  Def.'s Ex. K; *see also*

Pl.'s Opp'n, Ex. H (May 3, 2012 memorandum to plaintiff from Bowden documenting

discussion).  Bowden listed plaintiff's absences and informed her that her stated intention "to

continue to take unscheduled sick leave . . . was inappropriate."  *Id*. at 2.   Furthermore, Bowden

listed "work assignments" that plaintiff had "failed to acknowledge or perform."  *Id*. at 2-3.

As to the AWOL charges, plaintiff does not dispute that after she complied with

defendant's directive to provide a doctor's note for the admittedly unscheduled leave, her status

for all of those days, except May 21 for which she did not provide a note, was converted from

AWOL to LWOP, *see* Def.'s Fact ¶ 24 & Ex. M, thereby rendering any issues surrounding the

alleged adverse AWOL designation moot.

Plaintiff has not proffered any evidence suggesting that Bowden's decision to deny her

requests for advanced sick leave had anything to do with her age or any other protected status

listed in plaintiff's opposition, and defendant, through Bowden, has set forth legitimate business

concerns in both the reprimand letter and the document memorializing Bowden's earlier

discussion with plaintiff.[3]  Hence, the Court finds that no reasonable jury could find or infer a

_____

[3]    In her opposition to defendant's dispositive motion, plaintiff claims for the first time that her
complaint also pertains to her "protected rights under Title VII of the Civil Rights Act of 1964,
the Rehabilitation Act of 1973, . . . The Older Workers Benefits Protection Act, The Religious
Freedom Restoration Act of 1993, The 1st Amendment, The 6th Amendment, [and] The
Occupational Safety and Health Act (OSHA)," Pl.'s Opp'n at 2, but she has not moved pursuant
to Fed. R. Civ. P. 15 to amend the complaint, and she will not be permitted to do so at this late
stage of the proceedings.  *See Schmidt v. U.S*., 749 F.3d 1064, 1068-69 (D.C. Cir. 2014)
(explaining "the importance of navigating the procedural requirements for amending under Rule
15").   That said, the Court is mindful of plaintiff's *pro se* status and has read all of her filings

discriminatory motive behind defendant's refusal to advance sick leave to plaintiff and that defendant is entitled to judgment on this claim as a matter of law.

### 2. The Denial of Religious Leave

Plaintiff faults defendant for refusing to allow her "to earn religious comp time to repay the 9 hours" of such time she had already used. Pl.'s Opp'n at 17. To the extent that this allegation states a claim, it cannot withstand summary judgment since, as determined above, plaintiff has proffered nothing to refute defendant's legitimate business reasons for denying certain leave requests. Furthermore, no reasonable jury could find or infer religious animosity on defendant's part when presented with plaintiff's admission that "[m]anagement officials 'didn't know [her] religion,' " Def.'s Facts ¶ 32 (quoting Ex. H, Pl.'s EEO Aff. at 3), and that Bowden had previously approved her "request for 9 hours of advance compensatory time for religious purposes." *Id*. ¶ 31. Hence, the Court will grant summary judgment to defendant on this claim.

### 3. Constructive Discharge

" '[R]esignations or retirements are presumed to be voluntary . . . .' " *Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010) (quoting *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006) (Rogers, J., concurring)) (other citations omitted). "In certain cases, the doctrine of constructive discharge enables an employee to overcome the presumption of voluntariness and demonstrate she suffered an adverse employment action by showing the resignation or retirement was, in fact, not voluntary." *Id*. "The mere existence of workplace discrimination is insufficient to make out a constructive discharge claim," however. *Veitch*, 471 F.3d at 130. Constructive discharge in a Title VII or ADEA case "requires a finding of discrimination and the existence of certain

---

liberally but not so liberally as to prejudice the defendant by accepting new claims not reasonably foreseeable from the complaint's allegations.

'aggravating factors' that would force a reasonable employee to resign." *Id.* (quoting *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997)) (emphasis in original).

" '[A] constructive discharge occurs where the employer creates or tolerates discriminatory working conditions that would drive a reasonable person to resign.' " *Taylor v. FDIC*, 132 F.3d 753, 766 (D.C. Cir. 1997) (quoting *Katradis v. Dav–El of Wash.*, 846 F.2d 1482, 1485 (D.C. Cir. 1988)).  To establish a prima facie case of constructive discharge, then, plaintiff must show "that the employer deliberately made working conditions intolerable and drove her into an involuntary resignation." *Downey v. Isaac*, 622  F. Supp. 1125, 1132 (D.D.C. 1985) (citing *Clark v. Marsh*, 665 F.2d 1168, 1173 (D.C. Cir. 1981)).  Not only must plaintiff demonstrate that there was intentional discrimination, but she must also establish the presence of "aggravating factors." *Dashnaw v. Pena*, 12 F.3d 1112, 1115 (D.C. Cir. 1994); *Clark*, 665 F.2d at 1174.  Absent evidence with respect to each of these elements, plaintiff's claim that she was constructively discharged "must fail." *Beckwith v. Career Blazers Learning Ctr. of Wash., D.C.*, 946 F. Supp. 1035, 1052 (D.D.C. 1996).  "The test for constructive discharge is an objective one: whether a reasonable person in the employee's position would have felt compelled to resign under the circumstances, *Aliotta*, 614 F.3d at 566, and "courts have agreed that the standard for constructive discharge is quite high." *Veitch*, 471 F.3d at 134 (Rogers, J., concurring). Constructive discharge "does not occur when an employee leaves an unpleasant but objectively tolerable job because alternatives have become more attractive, even if the employer's misbehavior creates the unpleasantness or . . . its largesse affirmatively increases the appeal of the employee's alternatives." *Taylor*, 132 F.3d at 766.

Plaintiff alleges in the complaint that she was "forced . . . to resign or be subjected to removal from the agency, after threaten [sic] of employment."  Compl. at 1.  But plaintiff has not

stated any supporting facts and, most important at this summary judgment stage, she has not proffered any evidence to submit to a jury.  Bowden indeed warned plaintiff in the reprimand letter that "[i]f you fail to invoke your rights under FMLA and continue to take sick leave with a depleted sick leave balance, you will continue to be placed on AWOL status which may subject you to disciplinary action up to and including removal from Federal Service." Def.'s Ex. K.  But this warning alone cannot possibly support a constructive discharge finding and, thus, preclude summary judgment.  *See Veitch*, 471 F.3d at 134 (Rogers, J., concurring) (claim of forced resignation due to past discrimination insufficient where "[u]ltimately [plaintiff] resigned rather than face disciplinary proceedings for his disrespectful emails and unexplained absences"); *see also Crenshaw v. Georgetown Univ.*, 23 F. Supp. 2d 11, 20 (D.D.C. 1998) (finding plaintiff's own "speculation and conjecture" as to whether termination was imminent insufficient to withstand summary judgment).

The Court finds that plaintiff has presented no evidence from which a reasonable jury could find or infer discrimination, let alone intentional discrimination, even if this claim were broadened to include those protected categories listed in the EEO complaint but not pleaded in the civil complaint. *See id.* at 1 (alleging discrimination based solely on age); *cf. with* EEO Complaint (listing discrimination based on color, disability, religion,  gender and race); *see* Nov. 6, 2013 Order (advising plaintiff about responding to a summary judgment motion). Furthermore, plaintiff has not shown that her working conditions were so intolerable that a reasonable person would have felt compelled to resign.  On the contrary, plaintiff does not dispute that she was able to use annual and religious leave during the relevant time period, and that she was granted advanced leave and had received hours from the leave share program. Def.'s Facts ¶ 23.  In addition, plaintiff does not dispute that most of her AWOL status was

modified in her favor to LWOP once she presented the requested documentation. *Id.* ¶ 24. More to the point, the Court has already determined that the record lacks any evidence to support a finding that defendant acted with discriminatory motive, which alone is fatal to plaintiff's constructive discharge claim. Therefore, the Court will grant summary judgment to defendant on the constructive discharge claim and the accompanying negligence claim. *See* Compl. at 1 ("The defendant is negligent in the loss of the plaintiff's job . . . .").

### 4. The Refusal to Extend and Modify Reasonable Accommodation

Presumably because the complaint concerns for the most part leave issues under the FMLA, both parties have improperly conflated what the Court finds to be a discrimination claim under the Rehabilitation Act with the FMLA claim, or they have simply overlooked the former claim. Plaintiff alleges that Bowden denied her request in May 2012 "for assistance in moving [her] from the . . . assigned [] area [where she had worked for six years], as part of the reasonable accommodations." Pl.'s Opp'n at 5. This allegation triggers consideration under the Rehabilitation Act, not the FMLA. *Compare Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993) (the Rehabilitation Act of 1973 governs "employee claims of handicap discrimination against the Federal Government"), *with Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1332 (2012) ("The [FMLA] entitles eligible employees to take up to 12 work weeks of unpaid leave per year . . . for (D) the employee's own serious health condition when the condition interferes with the employee's ability to perform at work.") (citing 29 U.S.C. § 2612(a)(1)).

The evidence in the record shows that the parties engaged in discussions about the relocation request and that the request might have been among the September 2011 accommodations that plaintiff sought to extend and modify. *See* Def.'s Ex. R [Dkt. # 9-17] (Feb. 22, 2012 communique directing plaintiff to provide updated medical documentation "to support

your request to extend your current accommodation or address any other requests, such as your request to move into a private office . . .”); Def.’s Ex. O [Dkt. # 9-14] (Sept. 22, 2011 letter discussing plaintiff’s May 17, 2011 request for reasonable accommodation, including “an office environment with an air purifier and humidifier”).  Contrary to defendant’s argument, *see* Reply at 13-15, reasonable accommodation claims are “ ‘not subject to analysis under *McDonnell-Douglas*’ ” and “[t]he employer’s motivation for refusing the accommodation plays no part in [the] analysis” of such a claim.  *Floyd v. Lee*, 968 F. Supp. 2d 308, 316 (D.D.C. 2013) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998 (en banc)); *see accord Graffius v. Shinseki*, 672 F. Supp. 2d 119, 125, n.8 (D.D.C. 2009) (“While the District of Columbia Circuit has held that it is appropriate to apply the traditional *McDonnell Douglas* framework in a[] . . . Rehabilitation Act case to claims that an employer acted with discriminatory intent, [it] has stated that it is not appropriate to do so when the claim is that the employer failed to provide a reasonable accommodation . . . .”).  This is  because “[t]he failure to accommodate is itself discriminatory.”  *Floyd*, 968 F. Supp. 2d at 316.

To survive summary judgment on a failure to accommodate claim, plaintiff must point to evidence in the record from which a reasonable jury could find that (1) she had a qualifying disability; (2) her employer had notice of the disability; (3) she could perform the essential functions of the position with reasonable accommodation; and (4) her employer refused a reasonable request for accommodation.  *See Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 153-54 (D.D.C. 2013).  Defendant may rebut plaintiff’s case by showing that the requested accommodation would impose an undue hardship.  *See Morris v. Jackson*, No. 07-0491, --- F. Supp. 2d ---, 2013 WL 5943519 (D.D.C. Oct. 30, 2013).

Since neither party has properly addressed the reasonable accommodation claim, the Court will deny defendant's motion on this aspect of the discrimination claim and direct the parties to supplement the record with regard to the alleged denial of plaintiff's request to be moved to another work location to accommodate her upper respiratory ailments.

## D. The FMLA Claim

As applicable here, the FMLA permits an employee to take up to twelve weeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Attakora v. District of Columbia*, 951 F. Supp. 2d 179, 184 (D.D.C. 2013) (quoting 29 U.S.C. § 2612(1)(D)). Pursuant to the Department of Labor's FMLA regulations, "[a]n employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment." *Id.* (quoting 29 C.F.R. § 825.123(a)). "Importantly, § 825.123 uses the word 'must' to imply that the employee's absence is necessary for that employee's treatment. Alternatively, an absence for unnecessary treatment or no treatment at all means that the employee is not sufficiently incapacitated so as to render her unable to perform her duties." *Id.* (quoting *Jones v. C & D Techs., Inc.*, 684 F.3d 673, 677 (7th Cir. 2012)). "As the Seventh Circuit's analysis indicates, in order to show that the employee must be absent from work to receive medical treatment for a serious health condition, the employee must establish: (1) that the treatment to be received was necessary; and (2) that to undergo the treatment, the Plaintiff needed to be absent from work." *Id.*

The medical evidence in the record shows that plaintiff suffered from "seasonal allergies Rhinitis mild intermed asthma and . . . sinus, hypertension." Am. FMLA Form at 2. Plaintiff states that her "medical condition [] bec[a]me severe" in 2012 and she "started to have more flare

ups than usual [and] needed more days off" to "recuperate" since she "would get ill or severely congested . . . daily" when she arrived at work.  Pl.'s Opp'n at 5.   Although plaintiff's health care provider indicated on the form that plaintiff would need treatment, Am. FMLA Form at 3, neither the form nor any other evidence in the record describes a bona fide treatment. Furthermore, plaintiff's doctor specifically stated that while plaintiff needed to be absent from her work environment, she could continue to work via telecommuting.  *Id*.  Hence, the Court finds that no reasonable jury could find for plaintiff on her FMLA claim since there is no evidence showing that plaintiff's absence from work was "necessary" in order to receive medical treatment for a serious health condition.  *Attakora*, 951 F. Supp. 2d at 184.  Therefore, the Court will grant summary judgment to defendant on the FMLA claim.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted on all claims except plaintiff's claim arising from the denial of a reasonable accommodation. As to the reasonable accommodation claim, defendant's motion is denied without prejudice to renewal upon supplementation of the record.  A separate Order accompanies this Memorandum Opinion.


_____s/s_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

DATE:  July 31, 2014